AMERICAN SOCIETY OF CATARACT AND REFRACTIVE SURGERY; American Academy of Orthopedic Surgeons; American Academy of Ophthalmology; American College of Cardiology; American Gastroenterological Association; American Association of Neurological Surgeons; Congress of Neurological Surgeons; Society for Excellence in Eyecare,

Inc.; Outpatient Ophthalmic Surgery Society; American Society of Gastrointestinal Endoscopy; American College of Gastroenterology; and American Society of General Surgery, Plaintiffs,

v.

Donna E. SHALALA, Secretary of the United States Department of Health and Human Services and Nancy–Ann Min Deparle, Administrator of the Health Care Financing Administration of the United States Department Of Health and Human Services, Defendants.

No. 98 C 7061.

United States District Court,
N.D. Illinois,
Eastern Division.

April 17, 2000.

The lead counsel for the plaintiff are Michael Timothy Brody and Neal A. Coo-

per. Their firm is Jenner & Block. Chicago.

The lead counsel for the defendant is Jonathon C. Haile of the United States Attorney's Office. Chicago.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Plaintiffs American Society of Cataract and Refractive Surgery et al. ("American Society") claim that Defendants Donna E. Shalala, Secretary of the United States Department of Health and Human Services, et al. (the "Secretary") violated the Medicare Act, 42 U.S.C. § 405(a), (the "Act") by promulgating rules that were inconsistent with that Act. Plaintiffs further allege that defendants violated 5 U.S.C. § 706(2)(A) (the Administrative Procedure Act) by promulgating a regulation, 42 C.F.R. § 414.22(b)(5) (1998) that is arbitrary, capricious, an abuse of discretion, and contrary to law. Finally, plaintiffs allege that the defendants violated plaintiffs' constitutional due process rights. The Secretary filed a motion to dismiss pursuant to Federal Rules of Procedure 12(b)(1)(6), 12(b)(6), and 12(b)(7). For the reasons set forth below, the court grants defendant's motion to dismiss.

### Background

This case concerns the way that payments under the Social Security Act ("SSA") for certain physician services are calculated and a Congressionally-mandated conversion from one way of determining those reimbursements to another. Originally, reimbursements for physician services were based on what doctors had historically charged for those types of services. Congress changed the method for calculating the reimbursements by shifting from a charge-based to a resource-based system. The SSA now requires that payments be based on national, uniform relative value units ("RVUs"), which are determined by the resources used in furnishing a particular physician service. *See* 62 Fed.Reg. 59048, 59050 (1997). For each service, there are actually three RVUs: (1) an RVU for physician work; (2) an RVU for practice expense ("PE–RVU"); and (3) and an RVU for malpractice expense. *See id.*

When initially calculated, PE–RVUs were charge-based; now they are based on the staff, equipment, and supplies used in providing medical and surgical services. *See* Social Security Act Amendments, PL 103–432 § 121 (Oct. 31, 1994). American Society is challenging the way the Secretary has implemented the conversion from one method of calculating the reimbursements to another.

This court ordered Magistrate Judge Rosemond to conduct necessary proceedings and enter a Report and Recommendation ("R & R") on defendants' motion to dismiss and plaintiffs' motion for expedited declaratory judgment. The Magistrate recommended that this court deny both motions. The R & R characterized plaintiffs' claim as a collateral challenge to "the process used to determine RVUs," (R & R at 7), and found that 42 U.S.C. § 1395w–4(i)(1)(B) did not foreclose judicial review of such a challenge. The R & R also found that this statute was not plain and unambiguous and concluded that the Secretary's interpretation was reasonable.

American Society objects to the R & R's conclusion that the Secretary's interpretation was reasonable. American Society argues that the plain meaning of the statute was discernable, Congress' intent was clear, and the court's role is limited to determining whether the Secretary's Final Rule had violated the transition formula. Plaintiffs assert that there were only technical flaws associated with the codification of the statutory formula because all parties agreed "on the meaning of the transition formula as enacted, regardless of the problems with codification."

The Secretary objects to the R & R's conclusion that plaintiffs' challenge to the statutory scheme was collateral and not substantive. She emphasizes the express

language of the statute and argues that Congress regularly addresses the issues of fee schedules and practice expense units. She also notes particular features of the scheme—tight time frames, the statutory requirement of budget neutrality, the number of transactions affected by the fee schedules—which, she asserts, supports the conclusion that Congress did not intend for there to be judicial review of the determination of relative values and relative value units. This court reviews the R & R *de novo. See Willis v. Caterpillar, Inc.,* 199 F.3d 902, 904 (7th Cir.1999); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R.Civ.P. 72(b).

### Analysis

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the suit. *See Triad Assocs. Inc. v. Chicago Housing Auth.,* 892 F.2d 583, 586 (7th Cir.1989). Therefore, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. *See LeBlang Motors, Ltd. v. Subaru of Am., Inc.,* 148 F.3d 680, 690 (7th Cir.1998). The court will dismiss a claim only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Herdrich v. Pegram,* 154 F.3d 362, 369 (7th Cir.1998) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

The Secretary argues that this case should be dismissed for lack of jurisdiction because the Secretary's determinations of RVUs under 42 U.S.C. § 1395w–4(c)(2)(C )(ii) are precluded from judicial review by the express language of 42 U.S.C. § 1395w–4(i)(1). The Secretary also raises joinder issues. Because this court finds that the statute precludes judicial review of the Secretary's RVU determinations, this court need not consider this issue.

### I. Judicial Review

■ There is a strong presumption favoring judicial review of administrative action. *See Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 670, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986). Both the Supreme Court and Congress support this view. *See id.; see also,* 5 U.S.C. § 706 (providing that the Administrative Procedure Act allows the court to review and set aside agency decisions). This presumption, however, may be overcome by " 'specific language or specific legislative history that is a reliable indicator of congressional intent', or a specific congressional intent to preclude judicial review that is 'fairly discernable' in the detail of the legislative scheme." *Michigan Academy,* 476 U.S. at 673, 106 S.Ct. 2133, quoting *Block v. Community Nutrition Inst.,* 467 U.S. 340, 349, 351, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984).

American Society asserts that the Supreme Court's recent decision in *Shalala v. Illinois Council on Long Term Care, Inc.,* —— U.S. ——, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000), reconfirmed a strong presumption of judicial review of administrative action. This court agrees. *Illinois Council,* however, dealt with a statutory scheme permitting and regulating challenges and appeals, *see id.* at 1090–91, while here, as discussed infra, the statutory scheme expressly, clearly, and unambiguously precludes judicial review.

■ Initially, this court must decide whether Congress intended to foreclose judicial challenges to the Secretary's instructions and regulations with respect to 42 U.S.C. § 1395w–4(c), the statute under consideration here. Second, this Court must evaluate whether the challenge in this case is procedural (and thus collateral and not subject to preclusion) or is, instead, a substantive attack on "the determination of relative values and relative value units under subsection (c)." 42 U.S.C. § 1395w–4(i)(1)(B).

The presumption favoring judicial review can be overcome by the specific language of the statute or by specific legislative history. *See Michigan Academy,* 476 U.S. at 672–73, 106 S.Ct. 2133( ruling that

Congress can "make exceptions to the historic practice whereby courts review agency action"); *Briscoe v. Bell*, 432 U.S. 404, 412, 97 S.Ct. 2428, 53 L.Ed.2d 439 (1977) (finding preclusion if "the plain meaning and history of [the statute], the purpose and structure of the Act, as well as this Court's interpretation of it, indicate that judicial review ... is absolutely barred"); *Block*, 467 U.S. at 349, 104 S.Ct. 2450; ("The presumption favoring judicial review ... may be overcome by specific language or specific legislative history that is a reliable indicator of congressional intent."). The Medicare Act, by its express terms, precludes judicial review of the determination of relative values and relative value units. 42 U.S.C. § 1395w–4(i)(1) states that

> There shall be no administrative or judicial review under section 1395ff of this title or otherwise of (A) the determination of the adjusted historical payment basis ..., (B) the determination of relative values and relative value units under subsection (c) ..., (C) the determination of conversion factors ..., (D) the establishment of geographic adjustment factors ..., and (E) the establishment of the system for the coding of physicians' services.

While few courts have had occasion to review these statutory provisions, two courts have ruled specifically with respect to paragraph (B), the language at issue in this case. In *American Society of Dermatology v. Shalala*, 962 F.Supp. 141, 145–46 (D.D.C.1996), *aff'd*, 116 F.3d 941, 1997 WL 206144 (D.C.Cir.1997), the court ruled that "[it] 'lacks subject matter jurisdiction to consider plaintiff's challenge to HCFA's determination of RVUs' and that 'Congress plainly intended to give the Secretary the authority to develop and implement the [Resource Based Relative Value Scale] system without being subject to judicial scrutiny.'" Moreover, in *Furlong v. Shalala*, No. 94 Civ. 4817, 1996 WL 393526, 1996 U.S. Dist. LEXIS 9858 (S.D.N.Y.1996), *aff'd in part and rev'd in part*, 156 F.3d 384 (2d Cir.1998), the court found that paragraph (B), by its express

terms, precludes judicial review of RVU determinations but does not foreclose judicial review of all issues that may implicate subsection (c). These two cases conclude that the clear language of the Act precludes administrative and judicial review of paragraphs (B) and (E). Furthermore, a third case (concerning paragraph (C)) held that "the language of the 'no review' provision clearly indicates Congress' intent to preclude administrative and judicial review of the manner in which the conversion factor is to be calculated by the Secretary." *Painter v. Shalala*, 97 F.3d 1351, 1356 (10th Cir.1996).

Plaintiffs rely on *Furlong* to claim that 42 U.S.C. § 1395w–4(i)(1)(B) "does not foreclose judicial review of all issues which may implicate subsection [1395w–4](c)" and to argue that courts may review a reimbursement rule that affects the amount of reimbursement but is not part of the actual determination of relative values or relative value units. However, plaintiffs' reliance on *Furlong* is misplaced, where, as here, the policy at issue is not "utilized after the relative values and relative value units are determined," but rather, represents the actual values determination.

In *Furlong*, the court parsed 42 U.S.C. § 1395w–4(c) in detail and found that relative value units are "determined based on assessments such as the time and intensity required for a particular physician's service and the practice expense and malpractice percentages for that service." 1996 WL 393526, at *7, 1996 U.S. Dist. LEXIS 9858 at *21. Furthermore, the *Furlong* court states that "Section 1395w–4(i)(1)(B), by its express terms, precludes judicial review of these determinations." *See id.* The issue in *Furlong* was an ancillary policy developed by the Secretary and incorporated into 42 U.S.C. § 1395w–4(c). The court ruled that the prohibition on judicial review in 42 U.S.C. § 1395w–4(i)(1)(B) did not extend to "all issues which may implicate subsection (c)." *See id.* The court continued,

This omission is important because ancillary policies, such as the one and one-half rule, [at issue in *Furlong*] are not characterized as comprising part of the actual determination of relative values or relative value units. They are not referenced in Section 1395w–4(c)(2), entitled "Determination of relative values," or in Section 1395w–4(c)(2)(C), entitled "Computation of relative value units for components," but are incorporated into subsection (c) by Section 1395w–4(c)(4). Section 1395w–4(c)(4) provides that the Secretary may establish ancillary policies "to implement this section." Id. § 1395w–4(c)(4). Ancillary policies, in other words, are utilized after the relative values and relative value units are determined in order to implement their application.

*See id.* 1996 WL 393526, at *7–8, 1996 U.S. Dist, LEXIS at *21–22.

The *Furlong* court held that relative values are determined first, and only after this determination has been made does a value exist that the ancillary policy can affect. Therefore, *Furlong* is distinguished from the case at bar because here the formula codified at 42 CFR 414.22(b)(5) is precisely a part of the determination of the relative value units and is not something utilized afterwards in order to implement their application.[1]

Turning to the question of whether this challenge is procedural rather than substantive and, therefore, collateral and not subject to preclusion by the statute, the R & R describes plaintiffs' complaint as "seeking a ruling on whether the Secretary violated the Constitution or federal statutes while interpreting the statutory requirements for the transition to resource-based PE–RVUs." (R & R at 7.) The Magistrate Judge concluded that the statutory bar on judicial and administrative review does not prevent judicial review of this challenge to determine whether "the

process used to determine RVUs used by the Secretary violates federal statutes or the Constitution." (*Id.*) This court finds, instead, that a challenge to the process used to determine relative values and relative value units is not procedural or collateral but is in fact substantive.

Plaintiffs characterize their complaint as a general collateral challenge to agency practices and policies, which is "procedural" and not the type of challenge precluded from judicial review. *See McNary v. Haitian Refugee Ctr., Inc.,* 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991) (holding that statutory prohibition on judicial review of agency determination of special agricultural worker status did not apply to general collateral challenges to agency practices and policies). Reliance on *McNary* is misplaced, however, where, as here, a successful challenge would have the effect of deciding the merits of the case. In *McNary*, the Court distinguished *Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), where "success in their challenge of the Secretary's policy ... would have the practical effect of also deciding their claims . . on the merits." 498 U.S. at 495, 111 S.Ct. 888. The fact that the respondents "prevail on the merits of their purportedly procedural objections [would not] have the effect of establishing their entitlement to [special agricultural worker] status." *See id.*

In this Circuit, the case law is clear that challenges to agency policies are collateral when "[a] holding regarding the validity of that policy stands independent of the ultimate merits" of the benefit claims. *Martin v. Shalala,* 63 F.3d 497, 504 n. 16 (7th Cir.1995) (citing *Marcus v. Sullivan,* 926 F.2d 604, 614 (7th Cir.1991)). In the instant case, to hold invalid the Secretary's "method" would materially change all plaintiffs' benefits. It is not procedural to attack the validity of a regulation if, upon

---

1. Congressional intent to preclude judicial review can also be fairly discerned from the legislative scheme and the overall structure of the Medicare Act Part B payment scheme.

*See Painter,* 97 F.3d at 1356 ("[w]e conclude that inferences of congressional intent may be drawn from the overall structure of the new Part B payment scheme.").

success, that attack would go to the merits of the determination defined in the regulation.

The statute which is being implemented in this case, 42 U.S.C. § 1395w–4(c), is entitled "Determination of relative values for physicians' services." The relevant section of the statute is § 1395w–4(c)(2)(C), which is a mathematical formula, entitled "Computation of relative value units for components." It reads as follows:

For purposes of this section for each physicians' service—

(i) [Unchanged]

(ii) Practice expense relative value units. The Secretary shall determine a number of practice expense relative value units for the service for years before 1999 *equal to the product of*—

(I) [*Unchanged*]

(II) *the practice expense percentage for the service* (as determined under paragraph (3)(C)(ii)), and for the years beginning with 1999 based on the relative practice expense resources involved in furnishing the service. For 1999, such number of units shall be determined based 75 percent on *such product* and based 25 percent on the relative practice expense resources involved in furnishing the service. For 2000, such number of units shall be determined based 50 percent on *such product* and based 50 percent on such relative practice expense resources. For 2001, such number of units shall be determined based 25 percent on *such product* and based 75 percent on such relative practice expense resources. For a subsequent year, such number of units shall be determined based entirely on such relative practice expense resources.

(iii) Malpractice relative value units. . . .

(Emphasis added.)

The Plaintiffs are challenging the formula embodied in 42 C.F.R. § 414.22(b)(5), which represents the Secretary's implementation of the statutory language in § 1395w–4(c)(2)(C)(ii). The regulation comprises element "II" of the equation and results in the computation of relative value units. The regulation reads:

(5) For services furnished beginning January 1,1999, the practice expense RVUs are based on 75 percent *of the practice expense RVUs applicable to services furnished in 1998* and 25 percent of the relative practice expense resources involved in furnishing the service. For services furnished in 2000, the practice expense RVUs are based on 50 percent *of the practice expense RVUs applicable to services furnished in 1998* and 50 percent of the relative practice expense resources involved in furnishing the service. For services furnished in 2001, the practice expense RVUs are based on 25 percent *of the practice expense RVUs applicable to services furnished in 1998* and 75 percent of the relative practice expense resources involved in furnishing the service. For services furnished in 2002 and subsequent years, the practice expense RVUs are based entirely on relative practice expense resources.

(Emphasis added.)

The essential difference between the Secretary's formula and the statutory language is the substitution of the underlined phrases for the words "such product." The codification of this element of the formula is a part of "the determination of relative values and relative value units. . ." and is precisely what is precluded from judicial review by the express terms of 42 U.S.C. § 1395w–4(i)(1)(B).

Because the express language of the statute bars judicial review, and the overall structure of the Medicare Part B payment scheme supports this conclusion, this court finds congressional intent to foreclose judicial review of the Secretary's instructions and regulations. Because a holding regarding the validity of this agency policy would not stand independently of the ultimate merits of the plaintiffs' benefit claims but would instead materially alter all plaintiffs' claims, this challenge to agen-

cy policy is substantive and not collateral and there is no federal jurisdiction to hear this claim. Consequently, this court grants the Secretary's motion to dismiss.

## II. Other Issues

■ Even if the Medicare Act allows judicial review, this court would still find for the Secretary and deny American Society's motion for expedited declaratory judgment. As delineated in the Magistrate Judge's report, which we adopt with respect to this issue, the Secretary did not violate the Act because the rules promulgated by the Secretary were a reasonable interpretation of an unclear statute and, accordingly, were not inconsistent with the Act. Furthermore, the Secretary did not violate the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), because the transition formula used was a reasonable interpretation of an unclear statute and is, therefore, not arbitrary, capricious, an abuse of discretion, or contrary to law. (R & R at 16.)

■ This court also rejects plaintiffs' argument that 42 U.S.C. § 1395w-4(i)(1)'s denial of judicial review deprives them of due process. The Secretary's interpretation of the Act does not result in a violation of plaintiffs' constitutional due process rights. As the *American Society of Dermatology* court noted, when reviewing the very statute being challenged here and considering this exact issue, "Congress has stated that the Secretary's determination of RVUs ... cannot be reviewed. Because plaintiffs' underlying claims are based entirely on statute, they have no absolute right to judicial review." 962 F.Supp. at 146. I agree. The Supreme Court has clearly ruled that Congress can preclude judicial review. *See Briscoe*, 432 U.S. at 412, 97 S.Ct. 2428 (finding preclusion if "the plain meaning and history of [the statute], the purpose and structure of the Act, as well as this Court's interpretation of it, indicate that judicial review ...

is absolutely barred"). In this case, Congress has clearly foreclosed from judicial review "the determination of relative values and relative value units." 42 U.S.C. § 1395w-4(1)(B).

## Conclusion

The court grants defendants motion for leave to file supplemental authority [56–1] and plaintiffs' motion for leave to file supplemental authority [60–1]. For the reasons noted above, the court grants defendants' motion to dismiss [22–1] and denies plaintiffs' motion for expedited declaratory judgment [9–1].

## Report & Recommendation

ROSEMOND, United States Magistrate Judge.

### I. Background.

The Social Security Act ("SSA") requires that payments under the fee schedule be based on national, uniform relative value units ("RVUs") based on the resources used in furnishing a service.[1] For each physician fee schedule service, there are three RVUs: (1) an RVU for physician work; (2) an RVU for practice expense ("PE–RVUs"); and (3) an RVU for malpractice expense.[2] In the past, PE–RVUs were charge-based. They were essentially based on what doctors had historically charged for those types of services. Congress decided that resource-based reimbursements would be a better method of reimbursing physicians. This case concerns the conversion to resource-based PE–RVUs. The resource-based PE–RVUs are based on the staff, equipment, and supplies used in providing medical and surgical services.[3]

The following background is a brief recent history of the reimbursement of PE–RVUs and the piecemeal transition to the reimbursement of resource-based PE–RVUs.

---

1. 62 Fed.Reg. 59048, 59050 (1997).

2. *Id.*

3. Social Security Act Amendments, PL 103–432 § 121 (Oct. 31, 1994).

922

**A. The Omnibus Budget Reconciliation Act of 1989 ("OBRA 89").**

OBRA 89 set forth an initial PE–RVU formula which was subsequently codified as 42 U.S.C. § 1395w–4(c)(2)(C)(ii).

**B. The Omnibus Budget Reconciliation Act of 1993 ("OBRA 93").**

With OBRA 93, Congress modified the results of the original PE–RVU formula by creating specific adjustments for the years 1994, 1995, and 1996. These adjustments were codified at 42 U.S.C. § 1395w–4(c)(2)(E)(i).

**C. The Social Security Act Amendments of 1994.**

Section 121 of the SSA Amendments of 1994 required the Secretary[4] to develop a methodology for a resource-based system for determining PE–RVUs for each physician service.[5] That legislation required the new payment methodology to be fully implemented for services furnished in 1998.[6] Pursuant to the 1994 SSA Amendments, during June 1997, the Secretary developed a proposed rule for implementing resource-based PE–RVUs for 1998.[7] Before the close of the comment period on the proposed rule, the 1997 Balanced Budget Act ("BBA") delayed implementation of the resource-based PE–RVU system until 1999.[8]

**D. The Balanced Budget Act of 1997.**

The 1997 BBA contained additional requirements. The resource-based PE–

RVU system was to be phased in over four years.[9] There were specific percentages set forth in the statute for the conversion to resource based PE–RVUs.[10] In brief, the percentages of resource-based PE–RVUs to be used was 25% in 1999, 50% in 2000, 75% in 2001, and 100% for 2002 and all subsequent years.[11] This transition period specified by the 1997 BBA was codified at 42 U.S.C. § 1395w–4(c)(2)(C)(ii). There were drafting problems with the 1997 BBA amendments which resulted in confusion surrounding the exact language of § 1395w–4(c)(2)(C)(ii) after codification.[12]

The 1997 BBA also set forth two special requirements for 1998 PE–RVUs. These requirements mandated specific adjustments for the 1998 PE–RVUs and a dollar value limitation on the magnitude of those adjustments.[13] The 1998 PE–RVUs for certain services were to be reduced to 110 percent of their work RVUs for the service, and the money would be reallocated to raise the PE–RVUs for office visit procedures.[14] Also, this reallocation of PE–RVUs was limited to an aggregate value of $390,000,000.[15] These modifications were codified at 42 U.S.C. §§ 1395w–4(c)(2)(G)(i) and 1395w–4(c)(2)(G)(iv). The text of these statutes is contained in the appendix.

**E. The Actions Taken by the Secretary.**

The PE–RVUs for 1998 were the product of (I) the base allowed charges and (II)

4. As used in this order, "Secretary" means either the Secretary of Health and Human Services or a department or division under the Secretary's oversight or control.

5. See Social Security Act Amendments, PL 103–432 § 121 (Oct. 31, 1994).

6. Id.

7. 62 Fed.Reg. at 59052.

8. 62 Fed.Reg. at 59052; Balanced Budget Act of 1997, PL 105–33, § 4505(a).

9. Balanced Budget Act of 1997, PL 105–33, § 4505(b).

10. Id.

11. Id.

12. See 42 U.S.C. § 1395w–4 (Historical and Statutory Notes, "Codification").

13. Balanced Budget Act of 1997, PL 105–33, § 4505(e).

14. Id.

15. Id.

the practice expense percentage set forth in 42 U.S.C. § 1395w–4(c)(2)(C)(ii). They were adjusted as set forth in § 1395w–4(c)(2)(G)(i) as limited by § 1395w–4(c)(2)(G)(iv).

For the phase-in period for PE–RVUs, the Secretary created a regulation which would be used to apply the changes Congress had directed.[16] For the years 1999, 2000, and 2001 the Secretary used the adjusted 1998 figure to begin the calculations for the percentage transition set forth in § 1395w–4(c)(2)(C)(ii). Plaintiffs are arguing that the adjusted 1998 figures for the PE–RVUs should not be used as the starting point when calculating PE–RVUs for 1999, 2000, and 2001.[17] Plaintiffs argue that by using these figures Defendants are violating the Medicare Act, the Administrative Procedure Act, and Plaintiffs' due process rights.

## II. Motion to Dismiss.

Plaintiff's *Amended Complaint* contains three counts. Count I is for violation of the Medicare Act, Count II is for violation of the Administrative Procedure Act, and Count III is for violation of due process. Defendants' *Memorandum in Support of the Motion to Dismiss* primarily argues that the Secretary's determinations are precluded from judicial review by statute.[18]

### A. The Standard.

Generally, there is a strong presumption in favor of judicial review of administrative action.[19] Both the Supreme Court and Congress support this view.[20] For access to judicial review to be restricted, clear and convincing evidence of contrary legislative intent is required.[21] "Clear and convincing" in this context is not quite the same as clear and convincing in the strict evidentiary sense.[22]

### B. The Issue.

Defendants argue that there is a statutory prohibition on judicial review of this type of claim.[23] 42 U.S.C. § 1395w–4(i)(1)(B) explicitly bars administrative and judicial review of the determination of relative values and relative value units under 42 U.S.C. § 1395w–4(c). Plaintiffs argue that they are contesting the validity of the Secretary's interpretation (as embodied in 42 C.F.R. § 414.22(b)(5)) of the statutory formula for a transition to a new fee schedule.[24] Plaintiffs argue that, consequently, their complaint should not be precluded from judicial review under § 1395w–4(i)(1)(B).[25] Defendants argue that their *Motion to Dismiss* should be granted because Plaintiffs' *Amended Complaint* simply seeks judicial review of the determination of relative value units and should be barred by § 1395w–4(i)(1)(B).[26]

42 U.S.C. § 1395w–4(i)(1)(B) clearly bars the administrative and judicial review of the determination of relative value units. However, this type of bar on judicial and administrative review does not preclude a

---

**16.** 42 C.F.R. § 414.22(b)(5) (1998).

**17.** Plaintiffs' *Amended Complaint*, ¶ 43.

**18.** Defendants also raise joinder issues and argue the reasonableness of the Secretary's determinations.

**19.** *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986).

**20.** *Id.; See, e.g.,* 5 U.S.C. § 706 (Section of the Administrative Procedure Act allowing the court to review and set aside agency decisions).

**21.** 476 U.S. at 671, 106 S.Ct. 2133.

**22.** *See* 476 U.S. at 672, 106 S.Ct. 2133 (*citing Block v. Community Nutrition Inst.,* 467 U.S. 340, 350–51, 104 S.Ct. 2450, 81 L.Ed.2d 270 (clear and convincing standard serves as a "useful reminder to courts that, where substantial doubt about the congressional intent exists, the general presumption favoring judicial review of administrative action is controlling")).

**23.** *See* 42 U.S.C. § 1395w–4(i)(1)(B).

**24.** Plaintiffs' *Amended Complaint*, ¶ 21.

**25.** Plaintiffs' *Amended Complaint*, ¶ 21.

**26.** Defendants' *Reply Memorandum*, ¶ 1.

collateral challenge on statutory or constitutional grounds.[27] What Plaintiffs are really seeking is a ruling on whether the Secretary violated the Constitution or federal statutes while interpreting the statutory requirements for the transition to resource-based PE–RVUs.

It is presumed that Congress intends agencies to follow its statutes and courts to grant relief when agencies violate statutes.[28] Plaintiffs can challenge whether the process used to determine RVUs used by the Secretary violates federal statutes or the Constitution.

### C. Joinder Issues.

Defendants suggest that many doctors would be necessary and indispensable parties and that the difficulty of joinder should presumably weigh against judicial review.[29] Joinder is not necessary in this action. First of all, many of the doctors who would be affected are already involved as Amici Curiae. There is no clear indication that they even want to be joined.

Additionally, this case concerns whether the Secretary's interpretation and regulations comply with the statutory directives of Congress. Rule 19 does not require joinder in this action.[30] Complete relief can still be corded with the parties who are present in this action. The briefs filed by Defendants and Amici Curiae should adequately protect the interests of any absent physicians who agree with the Secretary's interpretation of the statutes. Also, not joining such physicians will not subject any party to a substantial risk of incurring multiple or inconsistent obligations.

### D. Summary.

There is federal jurisdiction to hear this claim. Defendants' Motion to Dismiss should be denied.

### III. Declaratory Judgment.

Plaintiffs argue that in promulgating the regulation, the Secretary violated 42 U.S.C. § 1395w–4(c)(2)(C)(ii) by using adjusted 1998 figures as the starting point for the transition period during 1999, 2000, and 2001. In Count One of Plaintiffs' Amended Complaint, Plaintiffs allege that Defendants violated 42 U.S.C. § 405(a) by failing to promulgate rules which were not inconsistent with the Medicare Act. In Count Two of Plaintiffs' Amended Complaint, Plaintiffs allege that Defendants violated 5 U.S.C. § 706(2)(A) by using a transition formula for PE–RVUs that is arbitrary, capricious, an abuse of discretion, and contrary to law. In Count Three of Plaintiffs' Amended Complaint, Plaintiffs allege that Defendants violated Plaintiffs' constitutional due process rights.

### A. The Standard.

The first consideration in statutory interpretation is whether the intent of Congress is clear as to the precise question at issue.[31] The inquiry is to be done by employing traditional tools of statutory construction.[32] The meaning of a statutory section cannot be ascertained when considered apart from related sections.[33] The

---

**27.** See McNary v. Haitian Refugee Ctr., Inc., 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991) (holding that statutory prohibition on judicial review of agency determination of special agricultural worker status did not apply to general collateral challenges to agency practices and policies). See also Illinois Council on Long Term Care, Inc. v. Shalala, 143 F.3d 1072 (7th Cir.1998) (holding that courts have jurisdiction over pre-enforcement challenges to Medicare regulations despite statutory language permitting judicial review only after a final decision by the Secretary).

**28.** 476 U.S. at 681, 106 S.Ct. 2133.

**29.** Defendants' Memorandum, at 21–23 (Jan. 4, 1999).

**30.** Fed. R. Civ. P. 19.

**31.** Regions Hosp. v. Shalala, 522 U.S. 448, 118 S.Ct. 909, 915, 139 L.Ed.2d 895 (1998) (citing Chevron, U.S.A, Inc. v. Natural Resources Defense Council, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

**32.** Id.

**33.** Time Warner Cable v. Doyle, 66 F.3d 867, 877 (7th Cir.1995) cert denied 516 U.S. 1141, 116 S.Ct. 974, 133 L.Ed.2d 894 (1996).

appropriate context of statutory interpretation includes the statutory scheme and the real-world situation to which the language pertains.[34] If the court determines Congress' intent is clear, that is the end of the matter.[35]

If the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's interpretation is based on a permissible construction of the statute.[36] At this point, the standard of review of the agency's interpretation is essentially whether or not the interpretation is reasonable.[37] Additionally, courts are to give heightened deference to the Secretary's interpretation of a complex and highly technical regulatory program such as Medicare.[38]

## B. § 1395w–4(c)(2)(C)(ii) is not plain and unambiguous.

### 1. The language in § 1395w–4(c)(2)(C)(ii) is not plain and unambiguous.

Mistakes were clearly made when the 1997 BBA changed the language in § 1395w–4(c)(2)(C)(ii). The experience of the U.S.C.A. editors provides an illustration of the problems with the 1997 BBA amendments. The 1997 BBA provided for "striking the comma at the end of the clause (ii) and inserting a period" and inserting a sentence.[39] This direction did not make sense. The U.S.C.A. editors understood this and made the amendment by "striking the comma at the end of clause (II) and inserting a period and the sentence which follows to reflect the probable intent of Congress."[40] In their analysis, the U.S.C.A. editors probably did as well as they could. However, inserting the language where the U.S.C.A. editors did doesn't follow the literal instructions of the 1997 BBA and also causes a hanging dependent clause to remain at the end of § 1395w–4(c)(2)(C)(ii).

Furthermore, the hanging dependent clause actually contradicts the language added by the 1997 BBA. The hanging dependent clause alone is sufficient to make § 1395w–4(c)(2)(C)(ii) ambiguous. In conjunction, the unclear 1997 BBA amendments to the statute and the resulting agglomeration of inconsistent, ungrammatical language prevents the possibility of deriving any plain, clear meaning from § 1395w–4(c)(2)(C)(ii).

### 2. Considering the context of the Medicare Act, the history of the PE–RVU statutes, and the prior practices of the Secretary, § 1395w–4(c)(2)(C)(ii) is not plain and unambiguous.

Plaintiffs assert that "such product" can only mean the product of subclauses (I) and (II).[41] The Secretary agrees that Plaintiffs' interpretation is a permissible construction of the statute.[42] However, the Secretary does not give this interpretation to § 1395w–4(c)(2)(C)(ii) because the Secretary does not consider it the best accommodation of the statutory language and the context of the Medicare Act.[43]

It is unclear as to whether the adjustments in § 1395w–4(c)(2)(G)(i) were meant

---

34. See Almendarez–Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 1223, 140 L.Ed.2d 350 (1998)(language, structure, subject matter, context, and history of a statute help determine its objectives and illuminate its text); In re Handy Andy Home Improvement Ctrs., Inc., 144 F.3d 1125, 1128 (7th Cir.1998)(context of statute includes real-world situation to which statutory language pertains).

35. Id.

36. Id.

37. See, e.g. 467 U.S. at 845, 104 S.Ct. 2778.

38. Methodist Hosp. of Sacramento v. Shalala, 38 F.3d 1225, 1229 (D.C.Cir.1994).

39. Balanced Budget Act of 1997, § 4505(b)(1).

40. See 42 U.S.C. § 1395w–4 (Historical and Statutory Notes, "Codification").

41. Plaintiff's Memorandum, at 10 (Nov. 4, 1998).

42. See 63 Fed.Reg. 58836 (1998).

43. Id.

to be incorporated into the transition formula in § 1395w–4(c)(2)(C)(ii). The Secretary reads § 1395w–4(c)(2)(C)(ii) in the context of the history of the long-term trend in PE–RVUs. Also, considering the past practice of the Secretary in carrying forward annual changes in PE–RVUs when statutes did not clearly forbid such practice, the Secretary has a reasonable argument that it is unclear as to whether the 1998 adjustments in § 1395w–4(c)(2)(C)(ii) are meant to be carried forward through the 1999–2001 PE–RVU transition period in § 1395w–4(c)(2)(C)(ii). The lack of clarity as to whether § 1395w–4(c)(2)(G)(i) should be integrated into § 1395w–4(c)(2)(C)(ii) prevents § 1395w–4(c)(2)(C)(ii) from being plain and unambiguous.

### C. *The Secretary's interpretation is reasonable.*

The Secretary reads the 1998 adjustments as being incorporated into the "such product" figure in the statute. The Secretary is integrating the 1998 adjustments into the transition formula in § 1395w–4(c)(2)(C)(ii).

1. *Given the history of PE–RVUs, the past practice of the Secretary, and the context of the Act, it is reasonable for the Secretary to interpret the 1998 adjustments as being integrated into "such product" in § 1395w–4(c)(2)(C)(ii).*

The 1998 adjustments were codified at 42 U.S.C. § 1395w–4(c)(2)(G)(i). Plaintiffs assert that the 1998 adjustments were meant to apply to 1998 only and that they should not be carried forward.[44] They emphasize the title of § 1395w–4(c)(2)(G): "Adjustments in relative value units for 1998".[45] They also emphasize the fact that the adjustments were not made part of the PE–RVU formula but were contained in a separate section.

Defendants argue that the 1998 PE–RVU adjustments embodied in § 1395w–4(c)(2)(G) should be considered in conjunction with § 1395w–4(c)(2)(C)(ii) since they were both enacted at the same time.[46] Defendants believe the contemporaneous enactment suggests a Congressional intent that the 1998 adjustments should be integrated into § 1395w–4(c)(2)(C)(ii).

Additionally, Defendants argue that they are interpreting the statutes the same way they had done with PE–RVU statutes in previous years and that Congress implicitly approved that interpretation by not changing the statutes or expressing disapproval when Congress made subsequent changes in the 1997 BBA.[47]

In the past, the Secretary's interpretation was that the 42 U.S.C. § 1395w–4(c)(2)(E) PE–RVU modifications for 1994, 1995, and 1996 were clearly intended to carry forward.[48] As a result the Secretary based the 1997 RVUs on 1996 numbers despite having no other clear statutory basis supporting this action.[49]

Congress' revisitation of this interpretation during the 1997 BBA without expressing any disagreement should be a strong indicator that the Secretary's position is correct or at least reasonable.[50] Defen-

---

**44.** Plaintiffs' *Memorandum*, at 15 (Nov. 4, 1998).

**45.** Plaintiffs' *Memorandum*, at 15 (Nov. 4, 1998); 42 U.S.C. § 1395w–4(c)(2)(G).

**46.** Defendants' *Memorandum*, at 33 (Jan. 4, 1999); Balanced Budget Act of 1997 § 4505.

**47.** Defendants' *Memorandum*, at 30 (Jan. 4, 1999).

**48.** Defendants' *Memorandum*, at 30 (Jan. 4, 1999).

**49.** Defendants' *Memorandum*, at 30 (Jan. 4, 1999); See Plaintiffs' *Amended Complaint*, ¶ 36 (stating that Plaintiffs believe that the Secretary incorrectly calculated the 1997 PE–RVUs and that while the 1997 PE–RVU figures are not challenged in this action, they may challenge them in the future).

**50.** Balanced Budget Act of 1997, § 4505; See *Lorillard v. Pons*, 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change").

dants argue that the Secretary is simply doing the same thing with the 1998 adjustments. In light of the Congressional action and the existing case law, the Secretary's position is certainly reasonable.

## 2. The Secretary's determination is reasonable considering the real-world realities of the Medicare Act.

The Secretary considered several practical problems with implementing § 1395w–4(c)(2)(C)(ii) as Plaintiff suggests. First of all, there are more than 2000 practice codes that have been developed since 1992.[51] The Secretary would have to figure out a way to reconcile the problem of updating practice codes with Plaintiffs' reading of the statute. Although there are established processes for updating practice codes, this administrative difficulty supports the reasonableness of the Secretary's statutory interpretation.

The Secretary also recognized that there would be an aberration and instability in the long-term trend of PE–RVUs.[52] This aberration would reverse in 2002 when resource-based PE–RVUs would be fully implemented.[53] The Secretary's analysis of the trend and history of PE–RVUs supports the reasonableness of the Secretary's statutory interpretation.

Additionally, under Plaintiffs' interpretation of § 1395w–4(c)(2)(C)(ii) dollars and RVUs would be mixed in the formula. The Secretary believes Congress likely intended both figures to be expressed in RVUs.[54] By using the 1998 adjusted figure as the starting point for the transition in § 1395w–4(c)(2)(C)(ii), the Secretary would have two figures which are both expressed in RVUs.[55] This fact also supports the reasonableness of the Secretary's statutory interpretation.

## D. Plaintiffs' Constitutional Due Process Arguments

Plaintiffs constitutional due process arguments are applicable to judicial review, but are not applicable to the substantive issues related to declaratory judgment. Plaintiffs argue that their constitutional due process rights have been violated.[56] If 42 U.S.C. § 1395w–4(i)(1)(B) barred judicial review this might be true. However, § 1395w–4(i)(1)(B) does not preclude judicial review of Plaintiffs' claim. Therefore, we express no opinion on whether a bar on judicial review of Plaintiffs' claim would violate Plaintiffs' due process rights.

However, with regard to the substantive issues in the declaratory judgment, Plaintiffs' due process claim has no merit. Even assuming that Plaintiffs have the requisite cognizable property interest, Plaintiffs have received adequate due process through judicial review of their claim. For this reason, we summarily reject any additional due process arguments set forth by Plaintiffs.

## E. Summary of the Declaratory Judgment Issues.

Based on the unclear text of § 1395w–4(c)(2)(C)(ii), the context of the statute, the related sections of the Medicare Act, the history of PE–RVUs, and the real-world situation to which the statute pertains, § 1395w–4(c)(2)(C)(ii) is not plain and unambiguous. In consideration of the lack of clarity of § 1395w–4(c)(2)(C)(ii), the context of the statute and the related sections of the Medicare Act, the history of PE–RVUs, the real-world situation to which the statute pertains, the complexity of the Medicare Act, and the deference due to the Secretary, the Secretary's interpretation is reasonable.

---

**51.** *See* 63 Fed.Reg. at 58837.

**52.** Defendants' *Memorandum,* at 39 (Jan. 4, 1999); *see also Declaration of Frederick T. Ensor, Jr.*

**53.** *Id.*

**54.** Defendants' *Memorandum,* at 28 (Jan. 4, 1999); *see also* 63 Fed.Reg. at 58837 (containing agency explanation).

**55.** *Id.*

**56.** Plaintiffs' *Amended Complaint,* ¶¶ 69–71.

Defendants did not violate 42 U.S.C. § 405(a) because the rules promulgated by the Secretary were a reasonable interpretation of an unclear statute and, accordingly, were not inconsistent with the Medicare Act. Defendants did not violate 5 U.S.C. § 706(2)(A) because the transition formula used by Defendants was a reasonable interpretation of an unclear statute and is therefore not arbitrary, capricious, an abuse of discretion, or contrary to law. Defendants' interpretation of § 1395w–4(c)(2)(C)(ii) does not result in a violation of Plaintiffs' constitutional due process rights.

***Accordingly, it is adjudged and recommended as follows:***

1. Defendants' *Motion to Dismiss* should be denied.

2. *Plaintiff's Motion for Expedited Declaratory Judgment* should be denied.

3. A Declaratory Judgment should be entered in favor of Defendants.

4. Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the parties must file their objections to the ***Report and Recommendation*** with The Honorable Ann C. Williams within 10 days after being served with a copy of the Report. Failure to file objections within the specified time period waives the right to appeal the Magistrate Judge's Report.[57]

***So Recommended.***

September 8, 1999.

---

**57.** *Video Views, Inc. v. Studio 21, Ltd.,* 797 F.2d 538 (7th Cir.1986). *See also, The Provident Bank v. Manor Steel Corp.,* 882 F.2d 258, 261 (7th Cir.1989) (when a matter has been referred to a Magistrate Judge, acting as a special master or § 636(b)(2) jurist, a party waives his right to appeal if he has not preserved the issues for appeal by first presenting them to the District Judge as objections to the Magistrate Judge's Report).