AMERICAN SOCIETY OF DERMATOL-
OGY, Melissa K. Clements, M.D., and
John A. Kasch, M.D., Plaintiffs,

v.

Donna SHALALA, Defendant.

Civil Action No. 99–1263 (NHJ)

United States District Court,
D. Columbia.

Sept. 5, 1996.

Frank Myers Northam, Webster, Chamberlain & Bean, Washington. DC, Kent Masterson Brown, Law Offices of Kent Masterson Brown, Danville, KY, for Plaintiffs.

Elizabeth Ann Pugh, Eric D. Goulian, U.S. Dept. of Justice, Washington, DC, Anne L. Weisman, U.S. Dept. of Justice, Washington, DC, for Defendant.

## MEMORANDUM OPINION

NORMA HOLLOWAY JOHNSON, District Judge.

Before the Court are three motions: the motion of plaintiffs, the American Society of Dermatology ("ASD"), Melissa K. Clements, M.D., and John A. Kasch, M.D., for summary judgment and permanent injunction, the motion of defendant Donna Shalala, Secretary of the Department of Health and Human Services, for judgment on the pleadings or, in the alternative, for summary judgment, and the motion of plaintiffs for leave to file an amended complaint. Plaintiffs bring this action pursuant to the Federal Advisory Committee Act ("FACA"), the Administrative

Procedure Act ("APA"), and Part B of Medicare under the Social Security Act.[1]

ASD is a national organization designed to advance and protect the interests of private dermatologists. Clements is a private, practicing dermatologist in Oklahoma City, Oklahoma. Kasch is a private, practicing dermatologist in Sacramento, California. Clements and Kasch are members and directors of ASD. Plaintiffs challenge the way in which the Secretary, through the Health Care Financing Administration ("HCFA"), administers the fee schedule for payment of physicians' services rendered under the Medicare program. The statute ordering the Secretary to create this fee schedule, called the Resource–Based Relative Value Scale ("RBRVS"), is codified at 42 U.S.C. § 1395w–4 (1994). Upon consideration of the motions, the supporting and opposing memoranda, the argument of counsel, the entire record herein, and for the reasons set forth below, the Court will grant plaintiffs' motion to amend the complaint, grant the Secretary's motion for summary judgment, and deny plaintiffs' motion for summary judgment.

### *Background*

**A. The Statutory Scheme**

This action concerns Part B of the Medicare Act, which is a voluntary program providing medical insurance benefits to enrolled aged or disabled persons. Participants in the program pay premiums to Medicare, which are combined with federal government contributions to the program. The Secretary administers the Medicare program.

Before 1992, payment for medical services under Part B was based on the reasonable cost of the physician's services. Effective January 1, 1992, Congress revised the method for calculating physicians' payments under Part B by switching to the RBRVS system. Congress directed the Secretary to "establish a uniform procedure coding system for the coding of all physicians' services." 42 U.S.C. § 1395w–4(c)(5). Under the RBRVS system, the physician's payment is the lesser of his or her actual charge or an amount determined pursuant to a fee schedule set by the Secretary. 42 U.S.C. § 1395w–4(a). The payment amount under the fee schedule is the product of:

(A) the relative value for the service (as determined [by the Secretary] in subsection (c)(2) of this section),

(B) the conversion factor (established [by the Secretary] under subsection (d) of this section) for the year, and

(C) the geographic adjustment factor (established [by the Secretary] under subsection (e)(2) of this section) for the service for the fee schedule area.

42 U.S.C. § 1395w–4(b)(1). The Secretary is responsible for "develop[ing] a methodology for combining the work, practice expense, and malpractice relative value units ['RVUs'] . . . for each service in a manner to produce a single relative value for that service." 42 U.S.C. § 1395w–4(c)(2). The RVUs are numbers representing, in relative terms, the time and effort required to perform a particular medical procedure. In determining the RVUs for physicians' services for which specific data are not available, the Secretary "may use extrapolation and other techniques . . . and shall take into account recommendations of the Physician Payment Review Commission and the results of consultations with organizations representing physicians who provide such services." 42 U.S.C. § 1395w–4(c)(2).

The Secretary is also responsible for reviewing the RVUs at least every five years and can adjust them to take into account changes in medical practice, coding changes, new data, or the addition of new procedures. 42 U.S.C. § 1395w–4(c)(2). In making such adjustments, the Secretary "shall consult with the Physician Payment Review Commission and organizations representing physicians." 42 U.S.C. § 1395w–4(c)(2). The statute provides that "[t]here shall be no administrative or judicial review" of the Secretary's determination of relative value units, conversion factors, geographic adjustment

---

1. Plaintiffs also alleged violations of the Government in the Sunshine Act and the Freedom of Information Act in their complaint. The Court deems those claims abandoned as they are not mentioned in plaintiffs' motion for summary judgment.

factors, or the establishment of the system for coding physicians' services. 42 U.S.C. § 1395w–4(i)(1).

## B. The American Medical Association Committees

Since 1966, the American Medical Association ("AMA") has published and updated the *Physicians' Current Procedural Terminology ("CPT")*. *CPT*, which is copyrighted and published as a book, contains a listing of descriptive terms and identifying code numbers for the standardized reporting of approximately 7,500 medical services and procedures performed by physicians. The purpose of *CPT* is to provide a uniform language that accurately describes medical, surgical, and diagnostic services to facilitate nationwide communications among health care workers, patients, and others. Barry S. Eisenberg Decl. ¶ 4. *CPT* is widely used by health insurance companies in the United States for tracking and processing medical claims. See Barton C. McCann, M.D., Dep. at 11. The CPT codes must be updated constantly to reflect changes in medical practice and technology. The CPT Editorial Panel is a panel of fourteen physicians, appointed by the AMA's Board of Trustees, who are responsible for updating the CPT codes. HCFA nominates one physician to be on the panel. The CPT Advisory Committee, consisting of seventy-five physicians nominated by the national medical specialty societies represented in the AMA House of Delegates and appointed by the AMA, supports the CPT Editorial Panel by providing information and advice about medical specialties. The Panel meets quarterly to review proposals to change the codes, submitted by physicians, medical specialty societies, state medical associations, and other interested parties.

In 1983, the Secretary entered an agreement with the AMA to use the CPT codes for reporting physicians' services under the Medicare program. The agreement gives HCFA permission to incorporate CPT codes into HCFA's Common Procedure Coding System ("HCPCS"). McCann Dep. Ex. 2. The AMA retains the responsibility for revising, updating, and modifying the CPT. *Id.* Since the time it adopted the CPT codes, HCFA has used the codes listed in *CPT* to identify a physician's service for payment under Medicare. McCann Dep. at 18. Although the CPT codes have been adopted in their entirety, unchanged, as the HCPCS, the agreement between the AMA and ICFA includes the provision that "HCFA retains sole responsibility for determining which codes represent covered services and the amounts to be paid for those services." McCann Dep. Ex. 2, ¶ 1.

In 1991, the AMA and its affiliated medical specialty societies established the AMA/Specialty Society Relative Value Scale Update Committee, known as the "RUC." The purpose of the RUC is to make recommendations to HCFA on the relative work values for new and revised CPT codes. The RUC is comprised of twenty-six physicians appointed by the AMA and national medical specialty societies. The RUC is supported by the RUC Advisory Committee, which provides technical assistance and advice. HCFA considers the RUC's recommendations prior to establishing its "interim fee schedules."

The Secretary issued her first fee schedule under the new RBRVS system in November 1991. Those values were final for the year 1992 while HCFA received and evaluated public comments on them. In November 1992, the Secretary published the 1993 fee schedule and began to receive comments on those values. This pattern has continued every year since 1992—in late November or early December of each year, HCFA publishes a notice in the *Federal Register* announcing the physician fee schedule for the following year. In this notice, HCFA publishes a table listing (1) the new or revised CPT codes, (2) the work RVU recommendations of the RUC and any specialty societies received by HCFA for these codes, (3) HCFA's decision on those recommendations (accepted, increased, or decreased), and (4) the interim work RVU for these CPT codes which will be in effect for the calendar year covered by the final rule. McCann Decl. ¶ 12. After a sixty-day period of receiving public comments on the interim values, HCFA convenes one or more "multispecial-

ty" panels of physicians to assist it in evaluating the comments received. After incorporating the comments, HCFA publishes a final fee schedule.

## C. Plaintiffs' Claims

As a preliminary matter, the Court will allow plaintiffs to amend their complaint to add two allegations that both parties addressed in their memoranda. *See* Fed. R.Civ.P. 15. Plaintiffs ask the Court to enjoin HCFA from enforcing the fee schedule published on December 8, 1995, and to remand the matter to the Secretary with an order that the Secretary cease delegating her authority to develop HCPCS codes, publicly disclose all materials submitted to or received by the AMA committees, and receive public comments on those materials before the issuance of a final fee schedule for 1996. Plaintiffs ask for a declaratory judgment (1) that the AMA committees and the HCFA multispecialty panels are "advisory committees" for purposes of FACA and, as such, have been in violation of FACA since 1991; (2) that the Secretary has violated 42 U.S.C. § 1395w–4(c)(5) by failing to establish a uniform procedure for coding physicians' services and, instead, entered into an agreement with the AMA to use the AMA CPT codes; and (3) that 42 U.S.C. § 1395w–4(i)(1) is unconstitutional to the extent that it bars administrative and judicial review. Plaintiffs seek a permanent injunction (1) prohibiting meetings of the AMA committees and the HCFA multispecialty panels until they are in compliance with FACA; (2) prohibiting the Secretary from using the AMA CPT codes in the implementation of the RBRVS physician payment system; and (3) voiding and barring the Secretary's use of recommendations from the AMA committees and the HCFA multispecialty panels, dating back to 1991, because the recommendations were given in violation of FACA.

*Discussion*

## I. Development of the Code System

Plaintiffs argue that the Secretary was required, under law, to develop her own code system. Plaintiffs claim that, by using the AMA CPT codes and allowing the AMA CPT Editorial Panel to update the codes, the Secretary has abdicated her authority and violated the law. They further claim that the Secretary has delegated her statutory duty to oversee the code system. They argue that this "delegation" of the Secretary's exclusive authority to issue new or revised RVU codes to the AMA CPT Editorial Panel and the AMA CPT Advisory Committee violates 42 U.S.C. § 1395w–4(c)(5).[2] Plaintiffs also claim that there is no notice and comment opportunity in the AMA CPT update procedure.

The Secretary argues that plaintiffs' claims are not subject to judicial review because Congress exempted the codes from judicial review. The statute provides:

(i) Miscellaneous provisions

(1) Restriction on administrative and judicial review

There shall be no administrative or judicial review under section 1395ff of this title or otherwise of—

. . . . .

(B) the determination of relative values and relative value units under subsection (c) of this section. and

(E) the establishment of the system for the coding of physicians' services under this section.

42 U.S.C. § 1395w–4(i)(*l*)(B) and (E). According to the Secretary, Congress plainly intended to allow the Secretary to implement the fee schedule without having to defend herself in litigation. The Secretary argues that the relief plaintiffs seek is the very type of relief that Congress intended to preclude when it enacted the above legislation. The Secretary also argues that granting such relief would be a major setback to the Medi-

2. "The Secretary shall establish a uniform procedure coding system for the coding of all physicians' services. The Secretary shall provide for an appropriate coding structure for visits and consultations. The Secretary may incorporate the use of time in the coding for visits and consultations. The Secretary, in establishing such coding system, shall consult with the Physician Payment Review Commission and other organizations representing physicians." 42 U.S.C. § 1395w–4(c)(5).

care program and would create chaos. In the alternative, the Secretary maintains that she has not violated § 1395w–4(c)(5) because she has established the codes mandated in the statute. She notes that nothing in the statute prevents her from adopting the CPT codes as part of the HCFA coding system. The Secretary finally argues that Congress intended for the Secretary to use the CPT codes. Plaintiffs reply that if the Court accepts this provision of no judicial review, the Court should rule that § 1395w–4(i) is unconstitutional because it violates the Due Process Clause of the Fifth Amendment and the doctrine of separation of powers.

■ The Court agrees with the Secretary that subsection (i)(1) could not be a more clear prohibition of judicial review. Although plaintiffs claim they are entitled to judicial review because a general presumption in favor of judicial review exists, that presumption has been overcome by the plain intent of Congress. *See Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 673, 106 S.Ct. 2133, 2137, 90 L.Ed.2d 623 (1986). The Court lacks subject matter jurisdiction to consider plaintiffs' challenge to HCFA's determination of RVUs and establishment of the coding system. Congress plainly intended to give the Secretary the authority to develop and implement the RBRVS system without being subjected to judicial scrutiny. *See generally Painter v. Shalala,* 1995 WL 693224 (D.Colo.1995).

■ The Court rejects plaintiffs' arguments that subsection (i)(*l* )'s denial of judicial review deprives them of due process and violates the separation of powers doctrine. Congress has stated that the Secretary's determination of RVUs and establishment of the coding system cannot be reviewed. Because plaintiffs' underlying claims are based entirely on statute, they have no absolute right to judicial review.[3] The Court thus lacks jurisdiction to consider the complaint insofar as plaintiffs petition the Court to enjoin HCFA from enforcing the fee schedule published on December 8, 1995; to order the Secretary to cease using the CPT codes

as the HCPCS codes; or to enter a declaratory judgment that the Secretary has violated 42 U.S.C. § 1395w–4(c)(5) by failing to establish a uniform procedure for coding physicians' services.

■ Even if the Court had jurisdiction to consider these challenges, the Court would reject plaintiffs' request for injunctive relief on equitable grounds. Injunctive relief is an equitable remedy that does not issue as of course. Such relief requires the Court to engage in the traditional balance of harms analysis—weighing the harms and benefits to each party, the adequacy of legal remedies, and the presence of irreparable harm. The Secretary has demonstrated that serious harm would result if the Court enjoined HCFA from enforcing the 1996 fee schedule. McCann Decl. ¶¶ 15–18. If such an injunction were to issue, the entire Medicare program would be thrown into chaos and medical care for millions of Medicare beneficiaries would be jeopardized. Thousands of physicians who treat Medicare beneficiaries would no longer be assured of payment for their services. McCann Decl. ¶ 15. Such harm far outweighs any benefit plaintiffs might obtain were the Court to grant the injunctive relief. On balance, therefore, the Court concludes that the equities favor denying injunctive relief.

## II. FACA

With respect to plaintiffs' FACA claims, 42 U.S.C. § 1395w–4(i)(1) does not deprive the Court of jurisdiction. FACA requires advisory committees to open their meetings and many of their records to the public. Plaintiffs claim the AMA CPT Editorial Panel, the AMA CPT Advisory Committee, the RUC, the RUC Advisory Committee (collectively, "the AMA committees"), and the HCFA multispecialty physician panels are "advisory committees" within the meaning of Section 3 of FACA. As the Court of Appeals for this Circuit has noted, not every government-related advisory group is an "advisory committee" under the statute. *Washington Legal Found. v. United States Sentencing*

---

**3.** Plaintiffs' "nondelegation" argument must also be rejected for the reasons stated by the Secre-

tary. *See* Def.'s Reply Mem. at 10–13.

*Comm'n,* 17 F.3d 1446, 1447 (D.C.Cir.1994). FACA § 3 provides the following definition:

The term "advisory committee" means any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof (hereafter in this paragraph referred to as "committee"), which is—

(A) established by statute or reorganization plan, or

(B) established or utilized by the President, or

(C) established or utilized by one or more agencies,

in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government. . . .

5 U.S.C.App. § 3 (1994).

Turning first to the AMA committees, it is clear that the committees were not established by the President or an executive agency. Plaintiffs claim that the relationship of HCFA to the AMA committees shows that the Secretary "utilizes" them to obtain "advice or recommendations," thus making the AMA committees "advisory committees" for purposes of FACA. The RUC and the RUC Advisory Committee clearly furnish advice or recommendations to HCFA. The Secretary disputes whether the CPT Editorial Panel and its Advisory Committee furnish advice or recommendations to HCFA. The Secretary also challenges whether the AMA committees are "utilized" by the agency.

The Supreme Court qualified the term "utilize" in *Public Citizen v. United States Dept. of Justice,* 491 U.S. 440, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989) (holding that the ABA Committee on judicial nominations is not an "advisory committee" even though it gives information to the President). In that case, the Court rejected a literal reading of the term "utilize," which would turn many groups into federal advisory committees that Congress did not intend to be federal advisory committees. " 'Utilize' is a woolly verb, its contours left undefined by the statute

itself. Read unqualifiedly, it would extend FACA's requirements to any group of two or more persons, or at least any formal organization, from which the President or an Executive Agency seeks advice." *Id.* at 452, 109 S.Ct. at 2566. The Court carefully examined the history of FACA, and concluded that an advisory committee comes within the confines of FACA if it is "utilized by a department or agency in the same manner as a Government-formed advisory committee." *Id.* at 456–57, 462–63, 109 S.Ct. at 2567–68, 2571. The D.C. Circuit applied the Supreme Court's qualifications of the term "utilize" in *Washington Legal Foundation,* 17 F.3d at 1450–51. According to the Court of Appeals, the term "is a stringent standard, denoting something along the lines of actual management or control of the advisory committee." *Id.* at 1450.

■ The Court finds *Public Citizen* and *Washington Legal Foundation* to be controlling in this case.[4] Accordingly, plaintiffs must show that HCFA has *actual management or control* of the AMA committees in order to show that HCFA "utilizes" the AMA committees. *Id.* at 1450. Although HCFA sends an observer to each RUC meeting and has one panel position on the CPT Editorial Panel, there is no evidence that HCFA has actual management or control of the AMA committees. To the contrary, the evidence shows that the AMA committees are run by the AMA. *See* Eisenberg Decl. ¶¶ 7, 16. The AMA appoints their members, provides staff, sets the agenda, records the minutes, and maintains records. Eisenberg Decl. ¶¶ 8, 13. The Court concludes that the AMA committees are not "utilized" by the agency. Because they are not "established or utilized by one or more agencies," the AMA committees are not subject to FACA.

■ The multispecialty physician panels, on the other hand, are established and controlled by HCFA. After HCFA publishes its proposed values for codes, and after the normal comment period, HCFA convenes the multispecialty panels to consider proposed values that received substantial disagreement

---

**4.** Plaintiffs cannot distinguish *Public Citizen* because of the constitutional questions raised in

that case. *See Sofamor Danek Group, Inc. v. Gaus,* 61 F.3d 929, 936 n. 36 (D.C.Cir.1995).

during the comment period. There is no fixed membership for the panels and the individual panelists differ from year to year. The panels are convened only once for the sole purpose of reviewing comments. Barton C. McCann, M.D., Decl. ¶ 13. The panelists hear arguments in support of and in opposition to the proposed values, ask the advocates questions, and then may enter into deliberations and discussions about the merits of each position. Grant P. Bagley, M.D., Dep. at 100–110. After the panelists have heard the arguments and discussed the issues, HCFA officials give each panelist a form on which to rate the work value of the particular procedure that was at issue. The ratings of the individual panelists are private and are not made available to other panel members. There is no attempt to achieve a consensus among the panelists. McCann Decl. ¶ 14. HCFA officials collect the forms, and later use the ratings for a statistical survey that they consider when determining the final work values. According to Barton C. McCann, M.D., the Chief Medical Officer for the Bureau of Policy Development at HCFA, the purpose of the multispecialty panels "is to generate data in the form of individual ratings which we then subject to a complex statistical analysis to determine if a change to the interim work RVU is appropriate." McCann Decl. ¶ 14.

In *Association of Am. Physicians and Surgeons v. Clinton*, 997 F.2d 898 (D.C.Cir. 1993), the Court of Appeals discussed whether a group of "consultants," "[d]rawn from the ranks of the medical profession, the academy, and from business," who provided information and opinions to President Clinton's Task Force on National Health Care Reform could be considered an advisory committee under FACA. "The point, it seems to us, is that a group is a FACA advisory committee when it is asked to render advice or recommendations, *as a group*, and not as a collection of individuals." *Id.* at 913. The Court of Appeals wrote:

> When we examine a particular group or committee to determine whether FACA applies, we must bear in mind that a range of variations exist in terms of the purpose, structure, and personnel of the group. Perhaps it is best characterized as a continuum. At one end one can visualize a formal group of a limited number of private citizens who are brought together to give publicized advice as a group. That model would seem covered by the statute regardless of other fortuities such as whether the members are called "consultants." At the other end of the continuum is an unstructured arrangement in which the government seeks advice from what is only a collection of individuals who do not significantly interact with each other. That model, we think, does not trigger FACA.

*Id.* at 915. Applying this "continuum" doctrine to the HCFA multispecialty panels, and upon consideration of the record as a whole, the Court concludes that the panels are not subject to FACA. The main factors leading to the Court's determination that the panels fall on the non-advisory committee end of the continuum are the lack of fixed membership for the panels, the annual change in panelists, that each panel is convened only once, that each panelist gives his or her individual work value rating on a form at the end of the process, the confidentiality of the individual panelists' ratings, and the absence of any attempt to achieve a consensus among the panelists. Although the structure of the multispecialty panels does not place the panels at the extreme end of the continuum, the Court concludes that the panels are not "advisory committees" and thus are not subject to FACA.

## III. APA

Plaintiffs argue that the Secretary's special reliance on the AMA committees and the multispecialty panels violates the rulemaking requirements of the APA. Section 553 of the APA provides for "notice and comment" agency rulemaking. 5 U.S.C. § 553 (1994). Proposed rulemaking must first be published in the *Federal Register*, then the agency must provide the opportunity for interested persons to comment on the proposal. After consideration of those comments, the agency publishes the final rule.

 Plaintiffs claim HCFA is in violation of the APA because it has not made public the information it received from the

RUC after the close of public comment on HCFA's ongoing five-year review of the physician fee schedule. Plaintiffs also challenge the fact that any changes in the AMA CPT codes, made by the AMA CPT Editorial Panel, are incorporated into the HCFA common procedure terminology codes without a comment period. Finally, plaintiffs challenge the fact that the multispecialty panels are convened after the public comment period. Plaintiffs argue, "it is patent that the notice-and-comment rulemaking procedures employed by HCFA are a sham, with the crucial information and recommendations being made secretively to the agency by an elite group of organized and structured private actors in a symbiotic relationship with the agency." Pls.' Mem. at 60.

The Secretary responds that HCFA has fully complied with the APA's rulemaking requirements. With respect to plaintiffs' complaint about the AMA CPT Editorial Panel, the Secretary argues that the AMA is not subject to the rulemaking requirement of the APA, and that the Secretary's adoption of the CPT codes in 1983 was not a "rule" within the meaning of the APA. The Secretary also claims HCFA's use of the multispecialty panels does not violate the APA because the sole purpose of the panels is to facilitate HCFA's evaluation of public comments, so the panels themselves are not subject to the notice and comment process. Finally, with respect to the RUC's involvement in the five-year review, the Secretary notes that the initial five-year review is ongoing. HCFA invited public comment in December 1994, reviewed the comments received, and forwarded some of them to the RUC. After reviewing the RUC's recommendations, HCFA will publish its proposed changes in the *Federal Register* and invite further public comment. According to the Secretary, HCFA had no legal obligation to obtain the first round of comments, but did so to identify potentially misvalued codes before issuing its proposed changes.

The Court agrees with the Secretary that there is no APA violation here. Plaintiffs' arguments about the five-year review and the HCFA multispecialty panels are simply without merit. The Court also agrees that

the AMA committees, including the AMA CPT Editorial Panel, are not subject to the APA's rulemaking procedures.

 With respect to the Secretary's adoption of the CPT codes, the Court finds that 42 U.S.C. § 1395w–4(i)(1)(E) precludes judicial review. As discussed above, that section provides that there shall be no judicial review of the Secretary's establishment of the system for the coding of physicians' services. The APA section on judicial review states, "[t]his chapter applies, according to the provision thereof, except to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701 (1994). It is clear that the Court does not have jurisdiction under the APA to consider plaintiffs' challenge to the way HCFA adopted the CPT codes in creating HCPCS.

### Conclusion

For the reasons set forth above, the Court will grant the motion of plaintiffs to amend the complaint, grant the motion of the Secretary for summary judgment, and deny the motion of plaintiffs for summary judgment. An appropriate Order will issue.

### ORDER

Before the Court are three motions: the motion of plaintiffs, the American Society of Dermatology ("ASD"), Melissa K. Clements, M.D., and John A. Kasch, M.D., for summary judgment and permanent injunction, the motion of defendant Donna Shalala, Secretary of the Department of Health and Human Services, for judgment on the pleadings or, in the alternative, for summary judgment, and the motion of plaintiffs for leave to file an amended complaint. Upon consideration of the motions, the supporting and opposing memoranda, the argument of counsel, the entire record herein, and for the reasons set forth in the Memorandum Opinion issued on this day, it is this 5th day of September, 1996,

ORDERED that the motion of plaintiffs to amend the complaint [# 33] be, and hereby is, granted; it is further

ORDERED that the motion of plaintiffs for summary judgment and permanent injunction [# 20] be, and hereby is, denied; it is further

ORDERED that the motion of defendant for judgment on the pleadings or, in the alternative, for summary judgment, [# 28] be, and hereby is, granted; it is further

ORDERED that any remaining pending motions be, and hereby are, denied as moot; and it is further

ORDERED that this case be, and hereby is, closed.