In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2518

American Society of Cataract and
Refractive Surgery; American Academy
of Orthopedic Surgeons; American
Academy of Ophthalmology, et al.,

Plaintiffs-Appellants,

v.

Tommy Thompson, Secretary of the
United States Department of Health and
Human Services and Thomas A. Scully,
Administrator of the Centers for Medicare
and Medicaid Services/1,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 7061--Ann Claire Williams, Judge.

Argued November 2, 2000--Decided January 28, 2002

Before Manion, Kanne, and Evans, Circuit
Judges.

Kanne, Circuit Judge.  Eleven national
medical societies and associations
representing physicians of different spe
cialties (collectively "petitioners")
appeal the district court's dismissal of
their statutory and constitutional
challenge to a regulation promulgated by
the Secretary of the Department of Health
and Human Services ("Secretary")
implementing a new system for calculating
a component of the Medicare physician fee
schedule for lack of subject matter
jurisdiction. Petitioners contend that
their claim is not precluded from
judicial review, and that the Secretary's
regulation is directly contrary to the
transition formula Congress established
for calculating the relevant component.
Because 42 U.S.C. sec. 1395w-4(i)(1)(B)
bars judicial review of petitioners'
claim, we affirm the district court.

I.  History

   Medicare, the federal health insurance
program for the aged and disabled has

three parts: Part A--Hospital Insurance Benefits; Part B--Supplemental Medical Insurance Benefits; and, Part C--Miscellaneous Provisions. See 42 U.S.C. sec. 1395 et seq. This case deals with Part B, which is a voluntary supplemental insurance program that covers payment for physicians' services and other healthcare services to aged and disabled individuals who enroll in the program. See 42 U.S.C. sec. 1395j-1395w-4. Physicians who participate in the Medicare program are reimbursed at a rate outlined in a physicians' fee schedule. Payment amounts under the fee schedule are calculated by multiplying (1) the relative value of a service; (2) the conversion factor for the particular year; and (3) the geographic adjustment factor applicable to the locality in which the service was provided. See 42 U.S.C. sec. 1395w-4(b)(1). The first component, the relative value of a service, is calculated by combining three subcomponents each of which is measured in terms of relative value units ("RVUs"). The three subcomponents are (1) the work component ("Work RVUs"); (2) the practice expense component ("PE-RVUs"); and (3) the malpractice component ("Malpractice RVUs"). See 42 U.S.C. sec.sec. 1395w-4(c)(2)(A)(i) & (c)(2)(C)(i)-(iii).

This case focuses specifically on the determination of PE-RVUs. In 1994, Congress directed the Secretary to develop a resource-based system for calculating PE-RVUs. See Social Security Act Amendments of 1994, Pub. L. No. 103-432, sec. 121(a)(1), 108 Stat. 4398, 4408 (1994) (codified at 42 U.S.C. sec. 1395w-4(c)(2)). Historically, PE-RVUs were "charged-based," meaning that they were predominately based upon "historical pattern[s] of charges billed by [physicians]." H. R. Rep. No. 101-247, at 338 (1989), reprinted in 1989 U.S.C.C.A.N. 1906, 2064. A "resource-based" system would be based on "the relative practice expense resources involved in furnishing the service." See 42 U.S.C. sec. 1395w-4(c)(2)(C)(ii).

In 1997, the Secretary proposed a new system for determining PE-RVUs. She qualified her proposal, however, by acknowledging that the new system warranted a transition period that should be gradually implemented. See 62 Fed.

Reg. 33158, 33194 (June 18, 1997) (to be codified at 42 C.F.R. pts. 400, 405, 410, 414). Shortly thereafter, Congress passed the Balanced Budget Act of 1997, Pub. L. No. 105-33, 111 Stat. 251 (1997) (codified at 42 U.S.C. sec. 1395w-4). In this legislation, Congress provided that the new system for calculating PE-RVUs would be phased in over a four-year period beginning in 1999:

The Secretary shall determine a number of practice expense relative value units for the service for years before 1999 equal to the product of--

(I) the base allowed charges (as defined in subparagraph (D)) for the service, and

(II) the practice expense percentage for the service . . . . For 1999, such number of units shall be determined based 75 percent on such product and based 25 percent on the relative practice expense resources involved in furnishing the service. For 2000, such number of units shall be determined based 50 percent on such product and based 50 percent on such relative practice expense resources. For 2001, such number of units shall be determined based 25 percent on such product and based 75 percent on such relative practice expense resources. For a subsequent year, such number of units shall be determined based entirely on such relative practice expense resources.

42 U.S.C. sec. 1395w-4(c)(2)(C)(ii). The above-cited language is the formula prescribed by Congress to be used during the four-year transition period to resource-based PE-RVUs.

In June 1998, the Secretary published her proposed rule for implementing the new resource-based system pursuant to Congress's directive in the Balanced Budget Act of 1997. See 63 Fed. Reg. 30818 (June 5, 1998). The Secretary indicated that she would use the 1998 PE-RVUs, as adjusted, in implementing Congress's four-year transition. See id. at 30839. Thus, "the final rule" published in November 1998 explained:

For services furnished beginning January 1, 1999, the practice expense RVUs are based on 75 percent of the practice expense RVUs applicable to services furnished in 1998 and 25 percent of the relative practice expense resources

involved in furnishing the service. For services furnished in 2000, the practice expense RVUs are based on 50 percent of the practice expense RVUs applicable to services furnished in 1998 and 50 percent of the relative practice expense resources involved in furnishing the service. For services furnished in 2001, the practice expense RVUs are based on 25 percent of the practice expense RVUs applicable to services furnished in 1998 and 75 percent of the relative practice expense resources involved in furnishing the service. For services furnished in 2002 and subsequent years, the practice expense RVUs are based entirely on relative practice expense resources.

63 Fed. Reg. 58814, 58910-11 (Nov. 2, 1998) (codified at 42 C.F.R. sec. 414.22(b)(5)) (emphasis added). In implementing the transition formula, the Secretary determined that the language "such product" in sec. 1395w-4(c)(2)(C)(ii) referred to the PE-RVUs for 1998. See 42 sec. C.F.R. 414.22(b)(5).

Two days after the final rule was promulgated, the petitioners filed a complaint in the United States District Court for the Northern District of Illinois, alleging that the final rule was arbitrary, capricious, and contrary to law in violation of the Medicare Act, the Administrative Procedure Act, and the Due Process Clause of the Fifth Amendment. Petitioners sought expedited relief that included: a declaratory judgment finding that the Secretary's transition formula as described in the final rule was improper; an injunction enjoining respondents from implementing the transition formula as described in the final rule; and an order requiring the implementation of the transition formula as petitioners contend Congress mandated by statute./2 The respondents moved to dismiss petitioners' complaint, contending that 42 U.S.C. sec. 1395w-4(i)(1) barred petitioners' claim.

Title 42 of the United States Code section 1395w-4(i)(1) provides that:

There shall be no administrative or judicial review under section 1395ff of this title or otherwise of--

(A) the determination of the adjusted

historical payment basis (as defined in subsection (a)(2)(D)(i) of this section),

   (B) the determination of relative values and relative value units under subsection (c) of this section, including adjustments under subsection (c)(2)(F) of this section and section 13515(b) of the Omnibus Budget Reconciliation Act of 1993,

   (C) the determination of conversion factors under subsection (d) of this section,

   (D) the establishment of geographic adjustment factors under subsection (e) of this section, and

   (E) the establishment of the system for the coding of physicians' services under this section.

(Emphasis added). The district court referred the case to a magistrate judge to conduct necessary proceedings and enter a Report and Recommendation on respondents' motion to dismiss and petitioners' motion for expedited declaratory judgment. The magistrate judge first considered whether 42 U.S.C. sec. 1395w-4(i)(1)(B) precluded judicial review of the petitioners' challenge. The magistrate judge found that although this subsection "clearly bars administrative and judicial review of the determination of relative value units . . . this type of bar on judicial and administrative review does not preclude a collateral challenge on statutory or constitutional grounds." Thus, the magistrate reasoned that because "[w]hat petitioners [were] really seeking [was] a ruling on whether the Secretary violated the Constitution or federal statutes while interpreting the statutory requirements for the transition to resource-based PE-RVUs," they were not precluded from seeking judicial review.

   The magistrate judge then considered the merits of petitioners' claims. In light of the "unclear text of sec. 1395w-4(c)(2)(C)(ii), the context of the statute, the related sections of the Medicare Act, the history of PE-RVUs, and the real-world situation to which the statute pertains," the magistrate found that the language of sec. 1395w-4(c)(2)(C)(ii) was not plain and

unambiguous. Furthermore, for many of the reasons articulated as to why the statute was ambiguous, as well as the deference due to the Secretary's interpretation, the magistrate judge determined that the Secretary's integration of the 1998 adjusted PE-RVUs into the such product language of the transition formula was a reasonable interpretation of the statute. Thus, the magistrate concluded that the respondents did not violate the Medicare Act, the APA, or petitioners' due process rights.

Both parties filed objections to the magistrate judge's Report and Recommendation with the district court. The district court considered the magistrate judge's Report and Recommendation; however, the court decided to grant the respondents' motion to dismiss petitioners' complaint for lack of jurisdiction pursuant to sec. 1395w-4(i)(1)(B). The court explained that "[b]ecause the express language of the statute bars judicial review, and the overall structure of the Medicare Part B payment scheme supports this conclusion," it found sufficient "congressional intent to foreclose judicial review of the Secretary's instructions and regulations." Additionally, the district court found that petitioners' "challenge to the process used to determine relative values and relative value units [was] not procedural or collateral but [was] in fact substantive," and therefore subject to preclusion by sec. 1395w-4(i)(1)(B). Furthermore, with respect to the merits of petitioners' complaint, the court noted that even if the Medicare Act permitted judicial review of petitioners' challenge, it would still have found in favor of respondents, the court then adopted the magistrate judge's report with respect to this issue. Petitioners now appeal.

II. Analysis

On appeal, this court first must determine whether 42 U.S.C. sec. 1395w-4(i)(1)(B) precludes judicial review of petitioners' claim. If review is precluded, we must consider whether this bar violates petitioners' constitutional rights and the doctrine of separation of powers. However, if this court does have jurisdiction to review petitioners' claim, the issue becomes whether the

Secretary's regulation violated the Medicare Act, the APA, or the petitioners' due process rights.

We review a district court's dismissal for lack of subject matter jurisdiction de novo. See Neuma, Inc. v. AMP, Inc., 259 F.3d 864, 871 (7th Cir. 2001). We conduct this review mindful of the strong presumption that Congress intends judicial review of administrative action. See Bowen v. Mich. Acad. of Family Physicians, 476 U.S. 667, 672, 106 S. Ct. 2133, 90 L. Ed. 2d 623 (1986). "[O]nly upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." Abbott Labs. v. Gardner, 387 U.S. 136, 141, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967). While we acknowledge that respondents bear a heavy burden to overcome "the strong presumption that Congress did not mean to prohibit all judicial review of" administrative action, Bowen, 476 U.S. at 672 (quotation omitted), we also recognize that "all presumptions used in interpreting statutes, may be overcome by, inter alia, specific language or specific legislative history that is a reliable indicator of congressional intent, or a specific congressional intent to preclude judicial review that is fairly discernible in the detail of the legislative scheme." Bowen, 476 U.S. at 673 (quotations omitted).

We agree with the district court's determination that the Medicare Act, by its express terms, precludes judicial re view of the determination of relative values and relative value units, including review of the regulation promulgated by the Secretary implementing a statutory transition formula for the determination of PE-RVUs. Title 42 of the United States Code section 1395w-4(i)(1) expressly provides that: "there shall be no administrative or judicial review under section 1395ff of this title or otherwise of-- . . . (B) the determination of relative values and relative value units under subsection (c) of this section . . . ." (emphasis added) ("paragraph (B)"). We find this provision to be a clear and explicit indication of Congress's intent to prohibit administrative and judicial review of the Secretary's decision now challenged by petitioners. While petitioners

acknowledge that paragraph (B) precludes administrative and judicial review of the Secretary's determination of specific RVUs assigned to specific services (e.g., the Secretary's decision to assign a specific number of RVUs for gallbladder surgery), they assert that this provision does not foreclose review of a systemic challenge to the Secretary's interpretation of Congress's nondiscretionary instructions for establishing components of the physician fee schedule.

In support of their argument, petitioners rely on language from Furlong v. Shalala, 1996 WL 393526, at *8 (S.D.N.Y. July 12, 1996), aff'd in part and rev'd in part on other grounds, 156 F.3d 384 (2d Cir. 1998). In Furlong, the district court found that paragraph (B) did not bar judicial review of a challenge to the application of the "one-and-one- half rule"/3 to reimbursement payments under the physician fee schedule. Id. In so finding, the Furlong court explained that paragraph (B) "does not foreclose judicial review of all issues which may implicate subsection (c)." Id. In the case at bar, petitioners assert that, similar to Furlong, their challenge involves an issue that implicates subsection (c) and to which judicial review is not foreclosed. However, petitioners ignore the balance of the Furlong court's reasoning. The rule challenged in Furlong was an ancillary policy applied only after relative values had been determined. See id. The Furlong court explicitly recognized that "relative values first must be determined and that only after this determination does a value exist which the [ancillary policy] may reduce by one-half." Id. Far from being ancillary to the determination of relative values, the regulation challenged by petitioners in this case is an integral part of the relative value determination.

Petitioners also seek support for their position from the Supreme Court's decision in McNary v. Haitian Refugee Center, 498 U.S. 479, 111 S. Ct. 888, 112 L. Ed. 2d 1005 (1991). In McNary, the Court held that sec. 210(e) of the Immigration and Nationality Act (INA), which barred judicial review "of a determination respecting an application"

for special agricultural worker ("SAW") status, did not bar judicial review of collateral challenges to unconstitutional practices and policies used in processing the application. 498 U.S. at 492 (quotation omitted). Petitioners rely on the similar use of the word "determination" in paragraph (B) to support their claim that the scope of that prohibition should be interpreted so as to permit their challenge. We do not agree.

The fact that the regulation in McNary and the regulation at issue in the case at bar both contain the word "determination" does not further petitioners' argument. Petitioners' mechanical comparison fails to acknowledge important differences between the claims asserted in McNary and the claim in the case at bar, and how these claims relate to the respective regulations being challenged. In McNary, the Court found that the language of sec. 210(e) prohibited the judicial review of an individual's challenge to the determination of his or her application for SAW status. See id. at 492. Thus, the Court concluded that the plaintiff's claim was outside the scope of sec. 210(e)'s prohibition because it merely challenged the policies and practices employed by the INS in processing applications. See id. Conversely, in this case, the language in paragraph (B) explicitly includes petitioners' challenge. Petitioners' claim consists of a challenge to a regulation implementing a formula for determining PE-RVUs. It would be difficult for Congress to have written paragraph (B) in clearer terms prohibiting such a challenge. See Painter v. Shalala, 97 F.3d 1351, 1356 (10th Cir. 1996) (finding that "the 'no review' provision clearly indicates Congress' intent to preclude administrative and judicial review of the manner in which the conversion factor is calculated by the Secretary"); Am. Soc'y of Dermatology v. Shalala, 962 F. Supp. 141, 146 (D.D.C. 1996) (finding that "Congress plainly intended to give the Secretary the authority to develop and implement the [resource-based relative value scale] system without being subjected to judicial scrutiny), aff'd, 116 F.3d 941 (D.C. Cir. 1997). Paragraph (B) bars the review of the "determination of relative values and relative value units." 42

U.S.C. sec. 1395w-4(i)(1). The regulation at issue sets out the formula for calculating PE-RVUs, practice expense relative value units. Petitioners' challenge is precisely what Congress sought to prohibit.

We find Heckler v. Ringer, 466 U.S. 602, 104 S. Ct. 2013, 80 L. Ed. 2d 622 (1984), a case which involved the Medicare Act, to be more analogous than McNary. In Heckler, the Court addressed a challenge to the Secretary's policy of refusing reimbursement for a particular type of surgery. See id. at 605. Without exhausting the administrative remedies, the plaintiffs sought relief in district court. See id. They attempted to distinguish their claim on the ground that it was procedural and not substantive, and therefore, not within the scope of the administrative review channeling provision. See id. at 614. However, the Court concluded that "the claims of . . . respondents [were nothing] more than, at bottom, a claim that they should be paid for their [particular] surgery." Id. The Court explained that the procedural claim was inextricably intertwined with the plaintiffs' claim for benefits, and therefore, must be channeled through the administrative review that was provided for in the statute. Id. Unlike McNary, but similar to the plaintiffs in Heckler, the "relief that [petitioners] seek to redress their supposed 'procedural' objections is the invalidation of the Secretary's current policy" for determining PE-RVUs. Id. We agree with the district court and conclude that such a challenge is not a procedural challenge, but rather a substantive challenge. We find that such a challenge falls within the scope of paragraph (B)'s clear bar on administrative and judicial review.

Additionally, the payment scheme in Part B of the Medicare Act supports our determination that Congress intended to bar judicial review of petitioners' challenge. RVUs are used to calculate the physician's fee schedule. The fee schedule is updated yearly and each year's schedule is established by November 1 of the preceding year. See 42 U.S.C. sec. 1395w-4(b)(1). As respondents highlight, this tight time frame demands that the Secretary's decisions regarding

the RVUs be made quickly and efficiently. Further, Congress directed that adjustments in the RVU component of the fee schedule be made in a budget neutral fashion, see 42 U.S.C. sec.sec. 1395w-4(c)(2)(B)(ii), (c)(2)(F), 1395w-4 note, requiring increases for some services to be offset by decreases in others. While petitioners acknowledge that a favorable decision would be disruptive, we believe, as respondents persuade us to, that to ensure finality so that the Secretary can make any necessary budget neutrality adjustments, claims such as petitioners' claim must be precluded from judicial review.

Petitioners argue that preclusion of their claim would be unconstitutional. Petitioners contend that without an opportunity for judicial review both their due process rights and the doctrine of separation of powers are violated. We do not find petitioners' arguments persuasive.

Petitioners assert that they "clearly have a property interest in reimbursement for their Medicare services in the amounts mandated by Congress through the transition formula set out in BBA'97." By enacting a regulation that they claim is contrary to Congress's transition formula, petitioners claim that the Secretary violated their due process rights. In order to trigger the procedural protections available under the Due Process Clause of the Constitution, petitioners must have a "legitimate claim of entitlement." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). In Roth, the Court explained that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it . . . . Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." Id. Petitioners rely on Furlong v. Shalala, 156 F.3d 384, 393 (2d Cir. 1998) ("Furlong II") for their proposition that physicians have a property interest in reimbursement for their Medicare services in the amounts mandated by Congress through the transition formula. We find that petitioners' reliance is misplaced.

In Furlong II, the issue addressed was whether non-assigned physicians' due process rights were violated by the Secretary's decision to deny them appeals rights. See id. The petitioner-physicians argued that they had a protected property interest in having the Medicare-approved charge for their services be based upon a rate equal to the amount promulgated in the statutory fee schedule, without being subject to reduction by the operation of the "one-and-one-half rule." Id. The court explained that "professionals who provide services under a federal program such as . . . Medicare have a property interest in reimbursement for their services at that the 'duly promulgated reimbursement rate.'" Id. at 393 (quotation omitted). Further, the court explained that "[t]he fee schedule provides the Medicare-approved rates for services and thus would typically constitute the duly promulgated reimbursement rate." Id. The petitioner-physicians argued that the application of the rule deprived them of this interest without due process of law because they have no recourse under the Act and its implementing regulations to appeal the allegedly improper determinations. See id. The court determined that a series of ALJ decisions that reversed the application of the rule to assigned-physicians, who had appeals rights, established a cognizable property interest in the reimbursement rate set out in the fee schedule, without a subsequent reduction, for non-assigned physicians, who did not have appeals rights. See id. at 395.

We agree with petitioners' assertion to the extent that they claim that they have a property interest in being reimbursed at the duly promulgated reimbursement rate as set out in the fee schedule. Petitioners, however, have not established that they have a property interest in the transition formula used to determine PE-RVUs. Petitioners argue that their property interest is greater than the property interest established by the ALJ decisions in Furlong II because their interest is found in a statutory mandate. We do not agree. Title 42 of the United States Code section 1395w-4(c)(2)(C)(ii) provides, in pertinent part: "The Secretary shall determine a number of practice expense relative value units for the service . . . ." (emphasis

added). The language of the statute plainly authorizes the Secretary to determine PE-RVUs.

In Painter, the Tenth Circuit found that there was no legitimate property interest in having reimbursements calculated in a particular manner. See 97 F.3d at 1357-58. Petitioners highlight that court's statement that there is "nothing in the Medicare Act that would lead a reasonable physician to believe he might be entitled to a greater payment amount for a particular service than was outlined in the Secretary's fee schedule." Id. at 1358. Petitioners contend that, unlike in Painter, in this case there is something in the Medicare Act that leads a reasonable physician to believe he is entitled to a greater payment. We find petitioners' reliance on this single sentence in the Painter court's analysis to be unpersuasive. The Painter court emphasized the structure of the Part B payment scheme in reaching its conclusion. See id. at 1357. That court stressed that the Secretary was charged with establishing the conversion factor, the component at issue in Painter. See id. Similarly, in this case, the Secretary was charged with establishing PE-RVUs. Additionally, the Painter court stressed that physicians knew prior to providing services the amount according to the fee schedule that they would be reimbursed during a particular year. See id. Similar to the conclusion reached by the Tenth Circuit, we find that petitioners are not "entitled to a greater payment amount for a particular service than was outlined in the Secretary's fee schedule." Id. at 1358.

Petitioners assert that by foreclosing judicial review, "the Secretary--rather than the courts--would effectively be the final arbiter of the meaning of an act of Congress." In regard to this alleged violation of the doctrine of separation of powers, we remind petitioners that:

[O]ur conclusion that judicial review is not available for [petitioners'] claim follows from our interpretation of an act of Congress, by which we and all federal courts are bound. The judicial power of the United States conferred by Article III of the Constitution is upheld just as surely by withholding judicial relief where Congress has permissibly foreclosed

it, as it is by granting such relief where authorized by the Constitution or by statute.

Dalton v. Specter, 511 U.S. 462, 477, 114 S. Ct. 1719, 128 L. Ed. 2d 497 (1994). Thus, we find no separation of powers violation where we are merely adhering to an explicit congressional prohibition of judicial review. The Painter court found that "[i]n enacting the 'no review' provision and prohibiting review of the Secretary's calculation of the conversion factor, we find no indication that Congress intended to infringe upon the powers of the judiciary and prohibit review of substantial constitutional issues." 97 F.3d at 1359. Likewise, we find no such indication here. While we recognize that in regard to the conversion factor at issue in Painter, Congress did not provide instructions for calculating the conversion factor, we do not believe that the guidance provided with respect to the transition formula for PE-RVUs alters the analysis.

Finally, petitioners argue even if paragraph (B) bars judicial review of their claim, this court should find jurisdiction because in enacting the final rule, the Secretary violated a clear statutory mandate and exceeded the scope of her delegated authority. See Leedom v. Kyne, 358 U.S. 184, 188, 79 S. Ct. 180, 3 L. Ed. 2d 210 (1958); see also Hanauer v. Reich, 82 F.3d 1304, 1307 (4th Cir. 1996). This argument requires us to take a cursory look at the merits of petitioners' claim to determine whether the Secretary exceeded her authority. See Hanauer, 82 F.3d at 1309. Because, on the merits, we would find the Secretary's regulation to be a reasonable interpretation of an unclear statutory mandate, we do not find petitioners' argument to be meritorious.

III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's decision granting respondent's motion to dismiss.

FOOTNOTES

/1 Tommy G. Thompson is substituted as defendant in place of the former Secretary, Donna E. Shalala and Thomas A. Scully is substituted as defendant in place of the former administrator, Nancy Min

De Parle. See Fed. R. Civ. P. 25(d)(1). The Health Care Financing Administration is now the Centers for Medicare and Medicaid Services.

/2 Essentially, petitioners contend that the "such product" language in Congress's transition formula refers to the PE-RVUs for 1991 and not for 1998, as the Secretary's regulation provides.

/3 The "one-and-one-half rule" was a multiple procedure reimbursement rule. Under this rule, the total Medicare-approved charges were determined by adding the Medicare-approved charges for one of the procedures to one-half of the Medicare-approved charges for the other procedure. The "one-and-one-half rule" was being applied to invasive monitoring procedures. The Furlong plaintiffs asserted that their reimbursements were insufficient because their monitoring procedures were medical, not surgical procedures and therefore should not be subject to the "one and one half rule." See id.