S&S RESEARCH, INC., & Robert Williams, Plaintiffs–Appellants,

v.

Gary H. PAULSZCYK, et al., Defendants–Appellees.

No. 01–2456.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 18, 2002.

Decided Aug. 14, 2002.

Before MANION, ROVNER, and EVANS, Circuit Judges.

## ORDER

Robert Williams, owner of S & S Research, Inc., sued Waukesha County, Wisconsin, and several Waukesha County Sheriff's Department (WCSD) officials after they removed Williams' company from the Department's towing service rotation list. Williams claimed that the County violated his constitutional rights by removing him from the list without a hearing and in retaliation for protected speech. The district court granted summary judgment for the defendants on both claims, and Williams appeals. We affirm the judgment of the district court.

## Background

Williams owns and operates S & S Research, which provides towing services, auto body and collision repairs, and automotive parts and service in Waukesha County. S & S provided towing service to the WCSD, which utilized a rotation system to determine which towing company to call for assistance. The rotation system drew complaints from various tow operators in the County, and indeed, after the events underlying this lawsuit, the WCSD shifted to a "modified" rotation system in response to the complaints.

On September 10, 1998, Williams mailed a letter to other towing companies lamenting the WCSD's rotation system and asserting that the system was responsible for a 50% decrease in his calls from the WCSD. In closing, Williams wrote,

IM ASKING YOU TO TAKE CARE OF YOUR REGULAR CUSTOMERS FIRST AND WAUKESHA SHERIFF AS A SECOND CHOICE, DON'T DROP WHAT YOUR DOING FOR THEM IT SURE APPEARS THEY DON'T CARE ABOUT US! WE MUST UNITE BECAUSE WINTER IS UPON U.S. AND WE MUST STAND OUR GROUND.

The WCSD received a copy of this letter, although the record does not reflect when or how. Robert Johannik, Deputy Inspector with the WCSD, testified that Williams' letter raised concerns about the "safety of the citizens, as well as the officers." Inspector Gary Paulsczyk recommended that S & S be removed from the tow rotation list as a result of the letter, which expressed Williams' unwillingness to provide timely service and "which obviously indicated issues of adverse impact on public safety and department efficiency." Sheriff William Kruziki testified that, upon the advice of Johannik and Paulsczyk, he ordered that S & S be removed from the rotation list. None of the defendants, however, can specify a precise date when the removal was official.

On September 15 the *Waukesha Freeman,* a local newspaper, published a front-page article discussing the WCSD tow rotation system. The article quotes Williams extensively—eight out of the eighteen paragraphs in the article reference Williams' criticisms of the rotation system, including his comment that the "public is getting ripped off."

Williams learned that his company had been removed from the tow rotation list on September 16, the day after the *Waukesha Freeman* article circulated. Believing his constitutional rights had been violated, Williams filed this lawsuit. He asserted that the WCSD's decision to remove S & S from the rotation list without notice or a hearing violated his right to due process. He also claimed that WCSD removed him from the list in retaliation for his public criticism of the Department and therefore in violation of the First Amendment. The magistrate judge granted summary judg-

ment in favor of the defendants, ruling that Williams possessed no property interest and therefore no right to due process and that the County's interests outweighed any of Williams' protected speech interests. Williams appeals, and we review the magistrate judge's decision de novo. *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir.2002).

### Due Process Claim

■ In order to have survived summary judgment on his due process claim, Williams must have possessed a property interest in remaining on the tow rotation list. *Ulichny v. Merton Comty. Sch. Dist.*, 249 F.3d 686, 699 (7th Cir.2001). A property interest is more than an "abstract need or desire" or a "unilateral expectation"; rather, a person must have a "legitimate claim of entitlement" to the benefit at issue. *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *see also Am. Soc. of Cataract and Refractive Surgery v. Thompson*, 279 F.3d 447, 455 (7th Cir.2002). Property interests are not created by the Constitution, but instead are "defined by existing rules or understandings that stem from an independent source such as state law." *Roth*, 408 U.S. at 577; *see also Gagan v. Monroe*, 269 F.3d 871, 876 (7th Cir.2001).

Here, Williams identifies no statute or ordinance giving him a property interest. Instead, he argues that his seventeen-year tenure on the rotation list and the WCSD's policy of removing operators only for "sufficient cause" bestow upon him a property interest in remaining on the list. Such internal rules or policies may create property interests, but only when they have "the force of law." *O'Hare Truck Serv., Inc. v. City of Northlake*, 47 F.3d 883, 886 (7th Cir.1995), *rev'd on other grounds*, 518 U.S. 712, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996); *Morley's Auto Body, Inc. v. Hunt-*

*er*, 70 F.3d 1209, 1216–17 (11th Cir.1995). As noted earlier, property rights are defined by state law, and so Wisconsin law controls whether Williams has a property interest simply by virtue of the length of his service and the department's removal policy. *O'Hare*, 47 F.3d at 886. We have not found, nor has Williams identified for us, any Wisconsin case recognizing a legal entitlement based on the type of informal policies Williams describes. Without such entitlement, the magistrate judge correctly granted summary judgment to the defendants on this claim.

### First Amendment Claim

■ At the summary judgment stage, Williams bore the burden on his First Amendment Claim of establishing that a reasonable jury could find from the evidence that he was removed from the rotation list because of "his speech on a matter of public concern." *Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 685, 116 S.Ct. 2342, ——, 135 L.Ed.2d 843, —— (1996). To meet this burden, Williams asserted, as he does now on appeal, that his speech in the letter and in the newspaper article touched on matters of public concern, specifically public safety and use of public funds in supporting an inefficient towing system. Williams also alleged, based on his perception of the timing of his removal, that the newspaper article primarily motivated the WCSD's decision to take S & S off the rotation list.

We agree that some of Williams' speech addressed a matter of public concern. But, at the same time, much of what Williams said related solely to his personal and economic interests. *See, e.g., Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). For example, Williams discussed in his letter to other tow operators how his calls from the sheriff had decreased by 50% since the rotation

system took effect. He made similar comments in the newspaper article and noted that the decline in calls translated to a $900 drop in business.

Regardless of the characterization of Williams' speech, he failed to establish that the WCSD removed him from the rotation list *because of* his public criticism. Williams argues that the suspicious timing—he did not learn of his removal until the day after the newspaper article was published—reveals the WCSD's true motivation. All three individual defendants, however, testified that the removal decision occurred after they reviewed a copy of the letter Williams wrote but before the newspaper article came out. They each explained that Williams' letter, which essentially included a veiled threat of a boycott, caused concern for public safety and efficient towing service. Williams failed to produce evidence to contradict the defendants' testimony on that matter. The record contains nothing from which a reasonable trier of fact could conclude that the WCSD terminated Williams because of his public speech. *See, e.g., Umbehr*, 518 U.S. at 685 (holding that the summary judgment burden is "an initial showing that requires him to prove more than the mere fact that he criticized the Board members before they terminated him"); *Acosta–Orozco v. Rodriguez–de–Rivera*, 132 F.3d 97, 101 (1st Cir.1997).

For the foregoing reasons, we AFFIRM the judgment of the district court.